U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 JUL -9 PM 2:58

CLERK
BY ______ KP
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ROBERT LAFAYETTE,
Plaintiff,

v.

CHARITY CLARK, Attorney General of the State of Vermont,
Defendant.

Case No. 2:25-cv-00433

**ORDER**
(Doc. 12)

Plaintiff Robert Lafayette ("Plaintiff" or "Lafayette") filed this action against Charity Clark, in her official capacity as the Attorney General of the State of Vermont ("Defendant"), seeking declaratory and injunctive relief relating to the enforcement of a civil stalking order issued by the Vermont Superior Court. Specifically, Plaintiff seeks to prevent Defendant from enforcing the civil stalking order to the extent that it prohibits him from attending, participating, and speaking at school board meetings. Plaintiff alleges it improperly impinges upon his First Amendment right to free speech.

Plaintiff filed a Motion for Preliminary Injunction requesting that this court "enjoin[] Defendant and her agents from enforcing the civil stalking judgment and associated no-contact order during the pendency of this action." (Doc. 12 at 7.) In this motion, Plaintiff argues the ongoing enforcement of the civil stalking order will result in irreparable harm based on the loss of his First Amendment right to free speech. Defendant opposes the request for a preliminary injunction. (Doc. 13.)

Lafayette represents himself in this matter. Defendant is represented by Assistant Attorney General David R. McLean.

**I. Factual Background.**

The Vermont Superior Court issued an order against Lafayette prohibiting him from stalking the South Burlington School District Superintendent. The order issued following an evidentiary hearing that occurred on September 24, 2025. This court has not been provided with a copy of the order, but Plaintiff filed a transcript of the hearing. (Doc. 4-10.) At the conclusion of the hearing, the state court ordered that Lafayette "stay away from" the South Burlington School District Superintendent. (Doc. 4-10 at 41.) The court stated:

> Mr. Lafayette, as you will have observed from the temporary order, stay away has a particularly defined meaning in the context of a stalking order. It means you don't communicate with her period, in any way, shape, or form. You don't phone, text, mail, email, don't post to her if you manage to find her on social media. You don't ask others to give her messages. You do not even wave at her when you see her on the street.
>
> You have observed, Mr. Lafayette, that as a public official, [the school superintendent] may need to receive, or you as a parent have a right to communicate with members or employees of the school district about your children. . . . Here, the Court is not constraining your ability to communicate with others than [the school superintendent].

(*Id.*) The trial court then ordered Lafayette to remain three hundred feet from the school superintendent and any member of her family. (*Id.* at 42.) Lafayette asked to be heard regarding the distance restriction as he wanted to be able to bring his children to school. (*Id.* at 44.) In response, the court indicated:

> I'm granting [the] request for a 300-foot stay cushion, but I'm adding the following language. Defendant shall have an exception to the 300-foot restriction above for the purposes of dropping off and picking up children at school, and attending his children's athletic contests, and then I was going to add or other performances. . . . [p]rovided that in such events he neither initiate nor prolong any contact with [the school superintendent].

(*Id.* at 46.)

Lafayette also inquired of the court how to serve the school superintendent with legal documents relating to cases he had filed. (*Id.* at 43-44.) The court responded that law enforcement

can serve legal paperwork or the documents could be sent to the law firm representing the school district and the superintendent. (*Id.* at 44.)

Lafayette filed a timely appeal of the trial court's decision. In a decision filed March 14, 2025, the Vermont Supreme Court affirmed the trial court's decision to grant the order. (Doc. 4-9.) Thereafter, Plaintiff filed the action now pending before this court.

**II. Procedural Background.**

In his Amended Complaint filed on June 23, 2025, Plaintiff asserts that "[t]his is a civil rights action to enjoin and declare unconstitutional the ongoing enforcement of a civil stalking order and related criminal prosecution, which are currently being used to punish Plaintiff's protected advocacy and silence his participation in public life." (Doc. 3 at 1, ¶ 1.) On June 23, 2025, Plaintiff also filed an Emergency Motion for Temporary Restraining Order to allow him to participate in a school board meeting scheduled to be held on June 26, 2025. (Doc. 6.) Defendant responded to the Emergency Motion, indicating in part, that the school board meeting Plaintiff sought to attend had already occurred on June 23, 2025. (Doc. 13, ¶ 5.) As a result, Plaintiff withdrew his request for emergency relief but continued in his request for a preliminary injunction.

The court issued an order indicating that Plaintiff's request for emergency relief was moot. (Doc. 15 at 1.) In the order, the court invited the parties to submit memoranda regarding the court's subject matter jurisdiction in light of the *Rooker-Feldman* doctrine. (Doc. 15 at 2.) Plaintiff filed a Memorandum of Law in Response to the Court's Request for Briefing on Rooker-Feldman Subject-Matter Jurisdiction. (Doc. 17.) Subsequently, Plaintiff filed an Urgent Request for Consideration of Pending Relief in which he requested the court rule on his request for a preliminary injunction to allow him to participate in a school board meeting on July 9, 2025. (Doc. 18.)

Defendant filed an opposition to the Motion for Preliminary Injunction and Motion to Dismiss. (Doc. 20.) In its pleading, Defendant argues the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, Plaintiff lacks standing, and Plaintiff has failed to allege the existence of a federal question. A hearing was held on July 8, 2025. (Doc. 23.)

**III. Subject Matter Jurisdiction.**

A court may raise the issue of subject matter jurisdiction *sua sponte*, as federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted). Plaintiff bears the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of New York,* 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks and citations omitted); *see generally D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462, 482–86 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 415–16 (1923). "The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008).

Following the Supreme Court's decision in *Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), there are four requirements, which if met, compel the court to dismiss the case for lack of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (alterations in original) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

"Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock*, 422 F.3d at 85; *see also Spickerman v. Carr*, No. 04–CV–6226, 2006 WL 140714, at *6 (W.D.N.Y. Jan. 17, 2006) ("Essentially, the Rooker–Feldman doctrine bars collateral attack on a state court judgment which attempts to cloak the attack as a § 1983 action in federal court." (citations omitted)).

Plaintiff concedes the first and fourth requirements of the *Rooker-Feldman* doctrine are met in this case. Plaintiff acknowledges he lost in state court with the issuance of the no-stalking order against him. He further agrees he filed this action after the state court judgment issued. Plaintiff asserts, however, that the second and third requirements of the doctrine are not present in this case. Plaintiff argues he is neither complaining of injuries caused by the state court judgment nor seeking review or redress of that judgment. Instead, Plaintiff argues he is merely seeking to limit the enforcement of the state court judgment to the extent he believes it infringes on his First Amendment right to free speech. Defendant disagrees and asserts the injuries Plaintiff alleges are a direct result of the state court judgment and any relief from that judgment would necessarily involve a review and modification of the state court's order.

The court agrees with Defendant. Plaintiff's stated injury, the alleged restraint on his First Amendment right to free speech,[1] results from the issuance of the order against stalking. Although Plaintiff frames his request as a request to limit enforcement of the order, such a limitation on enforcement necessitates a review and modification of the state court order. It would require an

[1] The court is not finding that Plaintiff's First Amendment right to free speech has been violated by the issuance of the state court order.

order from this court, requiring all authorities, whether Defendant, municipal law enforcement officials, or local prosecutors, to ignore a state court order where certain circumstances exist. This type of request to enjoin the enforcement of a state court no-stalking order to which plaintiff is subject, is precluded by the *Rooker-Feldman* doctrine. *See Bloomquist v. Town of Bridgton*, No. CIV. 02-137-PH, 2002 WL 31052490, at *3 (D. Me. Sept. 11, 2002) (finding plaintiff's request for injunctive relief to be an attempt to challenge validity of stalking order and prohibited by *Rooker-Feldman*); *Bill v. City of Portland*, No. CIV. CIV. 99–1580–ST, 2000 WL 268533, at *4 (D. Or. March 13, 2000) (noting challenge to enforcement of specific stalking order barred under *Rooker-Feldman*).

"Just presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed." *Hoblock*, 422 F.3d at 86. The "core requirement" is whether the state court order is the "source of the injury." *Id.* at 87.

> Can a federal plaintiff avoid *Rooker-Feldman* simply by clever pleading – by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not. [For example], [i]n the [context of] a child-custody [dispute], if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child. The example shows that in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments.

*Id.* at 88.

Similar to the child-custody example, Plaintiff alleges injury caused by Defendant, the individual he asserts is responsible for enforcing the order,[2] rather than by the court order being

---

[2] The court is not finding that Defendant is responsible for enforcing the state court order against stalking.

enforced. This type of pleading cannot avoid the *Rooker-Feldman* doctrine. "Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear." *Id.* In this case, Plaintiff challenges the enforcement by third parties of the state court judgment. Under *Rooker-Feldman*, that challenge can only be presented to the United States Supreme Court. This court does not have subject matter jurisdiction over such a claim.

**IV. Conclusion.**

The court DENIES Plaintiff's Motion for Preliminary Injunction (Doc. 12.), finding that it does not have subject matter jurisdiction. Normally, a finding of lack of subject matter jurisdiction would result in an immediate dismissal of the action. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). At the July 8, 2025, hearing on the Motion for Preliminary Injunction, however, Plaintiff indicated he would like the opportunity to respond to Defendant's Motion to Dismiss (Doc. 21) which seeks dismissal for, among other grounds, lack of subject matter jurisdiction. Because Defendant seeks dismissal with prejudice, and in light of Plaintiff's self-represented status, the court will not dismiss this action until Plaintiff has the opportunity to respond to Defendant's Motion to Dismiss. Plaintiff's response is due no later than August 11, 2025.

**V. Order.**

Plaintiff's Motion for Preliminary Injunction (Doc. 12) is DENIED.

DATED at Rutland, Vermont, this 9th day of July 2025.

Mary Kay Lanthier
United States District Court Judge